UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBIN WILLIE TURNER,

                              Plaintiff,          Civil Action No. 20-cv-12010
v.                                                Honorable Terrance G. Berg
                                                  Magistrate Judge David R. Grand
JASON THURAU, JOHN DUPRAY,
DANIEL J. ACCIAVATTI, and
MARLISA BEAUCHEMIN,

                              Defendants.

_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT MARLISA
BEAUCHEMIN'S MOTION TO DISMISS (ECF No. 8), DEFENDANT JOHN DUPRAY'S
MOTION TO DISMISS (ECF No. 16), DEFENDANT DANIEL J. ACCIAVATTI'S
MOTION FOR JUDGMENT ON THE PLEADINGS (ECF No. 17), AND DEFENDANT
JASON THURAU'S MOTION FOR SUMMARY JUDGMENT (ECF No. 19)**

Pro se Plaintiff Robin Willie Turner ("Turner") commenced this action against Defendants

Jason Thurau, New Baltimore Mayor John Dupray, Chesterfield Supervisor Daniel J. Acciavatti,

and 42nd District Court Administrator Marlisa Beauchemin[1] (collectively, "Defendants"), alleging

more than a decade worth of disputes with his neighbor, and discrimination and harassment by the

various municipalities, police officers, and state court personnel who dealt with those disputes.

(ECF No. 1.)  An Order of Reference was entered on September 23, 2020, referring all pretrial

matters to the undersigned pursuant to 28 U.S.C. § 636(b).  (ECF No. 11.)

---

[1] These are the names of the Defendants that appear on the docket, and they are the only ones in
the enumerated list of defendants in the section of Turner's pro se complaint that asks the plaintiff
to identify the defendants he is suing.  (ECF No. 1, PageID.2-3.)  However, in the body of Turner's
complaint, he also references additional related "defendants," such as "the City of New
Baltimore," "the Township of Chesterfield," and "the New Baltimore and Chesterfield Township
police departments." (*Id.*, PageID.9.)  Any discrepancies are immaterial as the dispositive motions
addressed in this Report and Recommendation expressly included arguments that apply to these
other "defendants."

Now pending before the Court are four dispositive motions: (1) Defendant Marlisa Beauchemin's motion to dismiss (ECF No. 8); Defendant John Dupray's (and the City of New Baltimore's) motion to dismiss (ECF No. 16); Defendant Daniel J. Acciavatti's (and Chesterfield Township's) motion for judgment on the pleadings[2] (ECF No. 17); and Defendant Jason Thurau's motion for summary judgment (ECF No. 19).   Turner responded to all[3] these motions and Defendants replied.   (ECF Nos. 22-29.)   The Court finds that oral argument will not aid it in resolving the motions, and declines to hold a hearing.

## I.   RECOMMENDATION

For the following reasons, the Court **RECOMMENDS** that all of the Defendants'

---

[2] Defendants Acciavatti and Chesterfield Township filed their motion for judgment on the pleadings after first filing an answer to Turner's complaint. (ECF No. 15.) In his response to their motion, Turner argues, "If the Defendant answers the complaint, they have waived their right to file a motion to dismiss based on the allegations in the complaint." (ECF No. 24, PageID.396.) This argument lacks merit.   First, despite the docket mis-naming the filing as a "Motion to Dismiss," in fact, Acciavatti and Chesterfield township filed a motion for judgment on the pleadings. (ECF No. 17.) This was an allowable procedural move. *See e.g.*, *Ebenisterie Beaubois Ltee v. Marous Bros. Const.*, No. 02 CV 985, 2002 WL 32818011, at *2 (N.D. Ohio Oct. 17, 2002) ("Once a party files an Answer, the appropriate procedural device is a motion for judgment on the pleadings pursuant to Rule 12(c)."). Second, because these defendants included in their affirmative defenses that Turner's complaint "fails to state a cause of action upon which relief can be granted," even a motion to dismiss would have been proper. (ECF No. 15, PageID.213.) "[I]n the Sixth Circuit, a post-answer motion to dismiss for failure to state a claim is treated as a motion for judgment on the pleadings if the defendant asserted the defense of failure to state a claim in his or her answer." *See Last Minute Cuts, LLC v. Biddle*, No. 18-2631-MSN-TMP, 2019 WL 6222280, at *2 (W.D. Tenn. Oct. 18, 2019), report and recommendation adopted, No. 218CV02631MSNTMP, 2019 WL 6219544 (W.D. Tenn. Nov. 21, 2019) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 n.1 (6th Cir. 1988); *Harnden v. St. Clair Cty.*, No. 18-1402, 2018 WL 8018118, at *2 (6th Cir. Oct. 25, 2018)).

[3] In their reply brief, Defendants Acciavatti and Chesterfield Township correctly note that their motion is ECF No. 17, and that Turner's response that is "linked" to that motion – ECF No. 23 – is actually Turner's response to Defendant Beauchemin's motion to dismiss. (ECF No. 29, PageID.465.) They seem to assert that Turner did not file a response to their motion. (*Id.*) However, this is mistaken. ECF No. 24, although purportedly "linked" to their answer, is actually Turner's "Response to Defendant Acciavatti and Chesterfield Township's Motion for Judgment on the Pleadings."

dispositive motions (**ECF Nos. 8, 16, 17, 19**) be **GRANTED** and that this case be **DISMISSED**.

## II.    REPORT

### A.    Factual Background

#### i.    *Complaint Allegations*

##### a.    *Thurau*

In his complaint, Turner asserts, "[t]his case is about how [his neighbor] Jason Thurau

along with the New Baltimore and Chesterfield Township Police Departments and the 42nd District

Court, being racially motivated, conspired to racially intimidate, harass, threaten and violate my

civil liberties because I am a black man living where I live.  I was attacked verbally and physically

and told that a black man would not be able to get a white man in trouble living in New Baltimore,

and that Mr Thurau could do anything he wanted to do to me and they (the New Baltimore police

Department) wouldn't do anything about it they wouldn't even make a report."  (ECF No. 1,

PageID.5.)

Turner goes on to allege a disturbing 14-year history of abuse and harassment by his

neighbor, Thurau, as well as by the Chesterfield Township Police Department and the New

Baltimore Police Department ("NBPD").  Specifically, he alleges:

> For all the years that Jason Thurau resided as my neighbor there were
> numerous incidents that were racially motivated, he constantly called me
> N[*****] on a regular basis.  He repeatedly pointed guns at me . . . Mr.
> Thurau stated that a white man living in New Baltimore will never get in
> trouble for shooting or killing a N[*****].  Mr. Thurau would become very
> upset everytime [sic] I would come outside, in my yard or in my garage.  I
> called the New Baltimore police department and they questioned me about
> being outside . . . they told me to stay in front of my house cause it was
> dangerous for me to walk around.  In August 2006 Mr. Thurau circulated and
> petitioned the city of New Baltimore to have me and my family prohibited
> from living there because we are "Black".  Thurau has falsely reported my
> family to Child Protective Services accusing us of abusing our
> grandchildren.  The allegations were investigated by Child Protective
> Services and found to be invalid.

In July 2017 I was assaulted and hit twice in the face by Mr. Thurau sicked his dogs on me and I was bitten by his dogs . . . He repeatedly called the new [sic] Baltimore Police Department along with the Chesterfield Police Department to harass and threaten me.  He conspired with the new [sic] Baltimore Police Department and the Chesterfield Township Police Department to violate and deny me my rights, and civil liberties.   . . . [Thurau] told my partner Michella Brown that he was going to kill me and he also told me that he was going to kill me.  I have witnessed Mr. Thurau damaging and destroying my property, I would report it to the New Baltimore police and nothing would ever be done about it.  I reported numerous incidents of Thurau degrading or harassing me to the New Baltimore police but nothing was ever done abouit [sic] it.  . . . Thurau violated a no contact order between myself and Thurau, imposed by the 42nd District Court I made a complaint about it on July 12, 2017 and nothing was done.

Jason Thurau also had surveillance cameras pointed directly at my house and he could see throughout my home and hear our conversations while we were in the garage . . . Those tapes were submitted to the New Baltimore PD and the 42nd District Court.  We have yet to receive copies.  The court reporter failed to transcribe this information into the transcript for the August 1, 2016 hearing.

(*Id.*, PageID.6.)

> b.   *John Dupray, the New Baltimore Police Department, and the City of New Baltimore*

Turner makes no allegations whatsoever against John Dupray, and instead seems to be suing him solely because he is the "Mayor of the City of New Baltimore."  (*Id.*, PageID.7.)  As to the City of New Baltimore and the New Baltimore Police Department, Turner alleges a series of incidents in which he claims to have been mistreated based on his race, including:

The City of New Baltimore accepted a petition from [] Thurau that requested my family be ousted from the community because we were "Black"  I informed Greg Nikkels[4] who scheduled the hearing to address the petition that it was illegal to hold such a hearing and that he was violating my rights. I received numerous violations from the city of New Baltimore that were utterly ridiculous.  . . . The New Baltimore police department has shown grave indifference to my family's racial intimidation and harassment.  They

---

[4] Turner does not present any facts showing who Greg Nikkels is, nor how he is associated with the City of New Baltimore.  (ECF No. 1.)

4

had been called out repeatedly at our request about our neighbor Mr. Thurau but we never received any redress.  I was told by an officer on the New Baltimore police department that Mr. Thurau has the right to do to me anything he wants to do to me.  He said he can hit me, he can beat me, he can shoot me and do anything he wanted to do to me and they would do nothing about it.  The officer said they wouldn't even do the paperwork for it.  . . . I was informed that it was my mistake for moving out to their community.  I was also told that I didn't have the same rights as the other people that lived out there. . . . In 2017 [Thurau] threatened to shoot me and cause bodily harm and kill me the police were called and I told them I wanted to press charges and they said no. . . . The New Baltimore police department along with the Chesterfield Township police has threatened and harassed and targeted me.  I was arrested and incarcerated for assault and battery for allegedly spitting and swinging my cane to protect myself from [Thurau's] dogs.  My significant other Michells [sic] Brown was told by the New Baltimore police that she would be raped and I would be killed.

Additional claims against the Chesterfield Township police department and the New Baltimore Police Department is that both departments pulled shotguns on me for running in the park behind my house.  And Chesterfield accosted [sic] me and said that I was breaking into my own house and attempted to arrest me for that.

(*Id*. at PageID.7.)

### c.   *Marlisa Beauchemin*

Turner asserts that he is bringing claims against "Marlisa Beauchemin Court Administrator of the 42nd District Court."  (*Id.*, PageID.8.)  His only allegations, however, are as follows:

My Due Process Rights were violated by the 42nd District Court for the undue delay in hearing my case it was adjourned 5 times caused substantial prejudice to my rights to a fair trial and that the delay was intentional to gain advantage over me.  The delay caused the 16th Circuit to impose jail time on an offense of assault and battery in which I was incarcerated for 4 days. . . . The Court clerk had been asked repeatedly to provide evidence, records and transcripts of the hearings that would show that I was actually the victim and should have been the petitioner of the PPO.  The clerks are concealing and denying me access to public records.  FOIA requests were not honored.

(*Id.*, PageID.8.)

#### d. *Daniel Acciavatti and the Chesterfield Township Police Department*

Finally, as to Defendant Acciavatti and the Chesterfield Township Police Department, Turner makes clear that he is suing Acciavatti solely in his role as "Supervisor of Chesterfield Township," and that he is suing the Chesterfield Township Police Department based on allegations that he and his family "have suffered emotional distress, been racially intimidated, harassed and threatened for over 17 years at the hands of Chesterfield and New Baltimore police departments." (*Id.*, PageID.8.)  The only specific incident Turner references is that on July 17, 2005, he was "arrested twice in the same day by the same police officer of the Chesterfield Township Police Department." (*Id.*)  Turner alleges that the officer "had [him] under surveillance at [his] home and tried to prevent [him] from running in the park behind [his] home," and said to Turner, "N[*****] I'm going to have you arrested if you don't do as I say," and that "they (the Chesterfield Police) are after me." (*Id.*)  Turner also claims that "[b]oth police departments accousted [sic] me with shotguns to my face and informed me that there is a different law for me because I'm black and that n[*****] is my name." (*Id.*)

#### ii. **Complaint Exhibits**

Turner attached many dozens of pages of exhibits to his complaint.  The Court will discuss some of them here as they provide additional context and details about his allegations.

#### a. *City of New Baltimore Violation Notices*

Turner alleges that when he opposed Thurau's "petition" for his "ouster" from the community, the City of New Baltimore responded by issuing a number of "utterly ridiculous" violation notices against him.  (*Id.* at PageID.7.)  Turner attached the following violation notices issued by the City of New Baltimore:

1) an August 25, 2006 Inspection Report regarding his "landscaping [with]

caution tape" (*id*. at PageID.17);

2) a July 6, 2009 Zoning Violation Notice for a temporary fence on his property (*id*. at PageID.16);

3) a July 31, 2009 letter regarding "the temporary fence" on his property (*id*. at PageID.20);

4) a January 3, 2011 warning notice about improper parking at his residence (*id*. at PageID.15);

5) a July 31, 2012 notice for violating a zoning ordinance regarding unlicensed vehicles (*id*. at PageID.14);

6) an August 31, 2015 notice for violating ordinances regarding weeds and parking (*id*. at PageID.13); and

7) an August 31, 2015 Noxious Weed Notice (*id*. at PageID.19).

None of the Notices charged Turner with any crime or civil infraction. Instead, each merely made him aware of a violation and asked him to rectify the matter within a specified time, typically a few days. (*Id.*)

b.   *June 4, 2016 Incident and Personal Protection Order Against Turner*

As noted above, Turner made vague allegations in his complaint about an instance in which he was charged with a crime. Additional details about that matter are contained in a June 4, 2016 Incident Report that Turner attached to his complaint. Officer N. Calandra (also "Uso" or "Unit Security Officer") provided the following narrative about this incident:

> Jason [Thurau] stated the incident all started when [Thurau] noticed his neighbor, Robin Willie Turner [ ] arrive home. [Thurau] stated he noticed as soon as [Turner] pulled his vehicle into his driveway, [Turner] immediately turned the radio up extremely loud. [Thurau] stated the argument then started after [Turner] approached Jason's fence and began swinging his cane at [Thurau's] two dogs. [Thurau] stated that [Turner] then told [Thurau] to control his dogs because they were barking. [Thurau] advised Uso his entire yard fenced [sic] and the dogs cannot get out. [Thurau] stated [Turner] then called his wife, Christina a "Bitch". [Thurau] stated he told [Turner] to leave his dogs alone and mind his own business.

7

[Thurau] stated that was when the heated argument started.  [Thurau] stated he then received multiple insults verbally from [Turner] including [Turner] calling [Thurau] a "Boy, Fag, bitch, etc".  [Thurau] stated while they were yelling at one another, [Turner] then raised his cane like a baseball bat and half swung the cane toward [Thurau].  [Thurau] stated [Turner] attempted to swing the cane at him twice.  [Thurau] stated he felt threatened by the cane swings.  [Thurau] stated [Turner] then proceeded to spit on [Thurau] twice, once at the property line in front of the fence while they were arguing and the other time after [Thurau] returned to behind his fence.  [Thurau] showed Uso how his shirt contained wet spots and yellow colored wet spots on his shirt [Thurau] reported were from [Turner's] spit.  [Thurau] stated the spit on his shirt may have come from the heated arguing at the property line.  [Thurau] stated after the arguing appeared to be over [Turner] made one additional comment asking [Thurau] "How's your son."  [Thurau] stated the comment was out of line and harassing as [Thurau's] 14 year old, committed suicide a few months ago.  [Thurau] stated he then grew infuriated and began yelling at [Turner].

Christina then added she was able to obtain most of the altercation on her cell phone and home surveillance cameras.

Uso reviewed Christina's cell phone footage that showed [Thurau] and [Turner] having a verbal altercation near the property lines of their respective residences.  Uso observed during the altercation [Turner] raise his cane and fake [sic] swing the cane toward [Thurau].  Uso also later in the video observed [Turner] state "How's your boy?" when [Thurau] walked away leaving the altercation.  Uso also did observe when [Turner] was at the fence on the property line, when [Thurau] was leaving the altercation, [Turner] leaned back and intentionally spit towards [Thurau's] position.  Uso noted in the video [Turner] continuously called [Thurau] "boy and fag".

\* \* \*

Uso then went and spoke with [Turner] at his driveway.  [Turner] stated he arrived home and was in his backyard when [Thurau's] two dogs began to bark at [Turner].  [Turner] stated he wanted to make sure the dogs did not attack him as the dogs were barking.  [Turner] stated he didn't want [Thurau] coming on his property or attacking him.

(*Id*. at PageID.39.)

Officer Calandra completed a warrant against Turner "for charges of Assault (2 counts) and Harassment," and presented it to the prosecutor.  (*Id*.)

Citing portions of Officer Calandra's report, on June 28, 2016, Thurau filed a Petition for a Personal Protection Order against Turner, though it is unclear whether this PPO was granted. (*Id*. at PageID.33-36.)

### c.      *Turner's Arrest, Probation, Probation Violation, and Incarceration*

Turner was charged with assault and harassment related to the June 4, 2016 incident, and on August 21, 2016, the 42nd District Court ordered Turner to appear for an arraignment.  (*Id*. at PageID.25.)  Turner's attorney, Todd A. Kaluzny, had e-mailed the district court requesting the police report for the June 4, 2016 incident, and (apparently due to delays in providing the report) Tuner's arraignment was adjourned four separate times, ultimately to January 23, 2017.  (*Id*. at PageID.26-29, 47.).

On January 23, 2017, Turner pled *nolo contendere* to the assault and harassment charges, and Judge William H. Hackel III sentenced Turner to eleven months' probation, with a $350.00 fine.  (*Id*. at PageID.41.)  He also ordered Turner to have no contact with Jason or Christina Thurau. (*Id*.)

On July 3, 2017, the court ordered Turner to appear on July 12, 2017, for disturbing the peace and a probation violation.  (*Id*. at PageID.30.)  On July 17, 2017, the court arraigned Turner on these charges, and sentenced him to four days in jail.  (*Id*. at PageID.22-23.)  The presiding judge set bail at $300, and ordered Turner to have no contact with Jason or Christina Thurau.  (*Id*. at PageID.43.)

### d.      *Turner's Other Complaints*

Turner filed several complaints with federal and state agencies regarding the aforementioned facts.  For example, on May 4, 2017, Turner filed a complaint with the Michigan Department of Civil Rights ("MDCR") against the NBPD alleging race and disability

discrimination.  (*Id*. at PageID.56.)  His charge stated:

> Most recently around March 6, 2017, after returning from court, my Caucasian neighbor called me a racially derogatory name.  I called the police and two Caucasian officers came out to question the both of us.  I requested to press charges and an officer replied, "no charges will be filed today."  I believe my race and disability were factors in the denied service I was subjected to by respondent.

(*Id*.)

On December 5, 2017, the MDCR issued a Notice of Dismissal of this complaint.  (*Id*. at PageID.64.)  On December 28, 2017, Turner appealed that dismissal, but the MDCR denied the appeal as untimely.  (*Id*. at PageID.65-69.)

Turner also filed a Consumer Complaint with the Michigan Department of Attorney General.  (*Id*. at PageID.72.)  Last, Turner filed a complaint against Thurau with Child Protective Services.  (*Id*. at PageID.81.)  CPS dismissed the complaint.  (*Id*.)

### B.     Procedural Background

On September 11, 2020, Defendant Marlisa Beauchemin filed a motion to dismiss alleging that Turner's complaint fails to state a claim against her for multiple reasons including:  the Eleventh Amendment bar on suits against state officials in their official capacity; quasi-judicial immunity; qualified immunity; the statute of limitations; and the bar against using § 1983 to challenge state court rulings, as held by *Heck v. Humphrey*, 512 U.S. 477 (1994).  (ECF Nos. 8, 26.)  Turner responded with a number of legally inaccurate and/or inapplicable statements, and requested that the Court toll the statute of limitations.  (ECF No. 23 at PageID.376-79.)

On September 30, 2020, the City of New Baltimore and John Dupray filed a motion to dismiss, alleging that Turner's complaint fails to state a claim for multiple reasons, including: failure to plead any facts regarding Mayor Dupray; lack of standing; the statute of limitations; the bar against holding municipalities liable for §1983 claims based on *respondeat superior* , as held

by *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978); and qualified immunity.  (ECF No. 16.)  Turner argues that his claims are valid due to "the habitual denial of equal protections [] under the law."  (ECF No. 25, PagID.412.)  Turner also argues that he is in compliance with the statute of limitations based on his July 30, 2017 complaint.  (*Id*. at PageID.415.)

On September 30, 2020, Defendant Acciavatti and Chesterfield Township filed a motion for judgment on the pleadings.  (ECF No. 17.)  Turner responded with similar arguments to those detailed above.  (ECF Nos. 24.)

On October 5, 2020, Defendant Jason Thurau filed a motion for summary judgment alleging that Turner's claims are barred by the statute of limitations, and that he lacks standing under Article III, fails to allege sufficient facts to carry his claim, and cannot bring constitutional claims against a private citizen.  (ECF No. 19.)  Turner argues that summary judgment should be denied because he "brings claims against Jason Thurau for conspiracy in violation of the Fifth, Eighth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985."  (ECF No. 22 at PageID.355.)  Specifically, he alleges, "[w]hen Defendant, the New Baltimore and the Chesterfield Twp. Police Department hurled racial language at me[,] threatened to kill me, and refused to act[,] showing deliberate indifference[, they] caused [a] dispute of material facts."  (*Id*.)

While the Court will not address all the asserted grounds for dismissal in the various motions, for the reasons discussed below, each of the moving Defendants' motions should be granted, and this case should be dismissed.

### C.    Legal Standards

#### 1.    *Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6)*

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal

sufficiency.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."  *Twombly*, 550 U.S. at 556.  Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief."  *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, the Court must accept the factual allegations in the complaint as true.  *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  That tenet, however, "is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," to prevent a complaint from being dismissed on grounds that it fails to comport sufficiently with basic pleading requirements.  *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

When a court is presented with a motion testing the sufficiency of a complaint, "it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are

referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] ... is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

### 2. Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c)

A motion under Fed. R. Civ. P. 12(c) "tests whether a cognizable claim has been pleaded in the complaint." *See Shield v. Fanny Farmer Candy Shops, Inc*., 859 F.2d 434, 436 (6th Cir. 1988). The motion "will be granted if the facts as alleged are insufficient to make a valid claim or if the claim shows on its face that relief is barred by an affirmative defense." *See Riverview Health Inst. LLC v. Medical Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010). It is reviewed under the same standard as motions to dismiss under Fed. R. Civ. P. 12(b)(6). *See Vickers v. Fairfield Medical Center,* 453 F.3d 757, 761 (6th Cir. 2006).

### 3. Motion for Summary Judgment

Pursuant to Rule 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the

13

non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (quoting *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989)). Indeed, "'[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'" *Id.* (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)). "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Id*. at 560 (citing *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

### D.    Analysis

#### 1.    Beauchemin

Liberally construing the allegations in Turner's complaint, he claims that Beauchemin, in her role as the Court Administrator of the 42nd District Court, violated his Fifth and Fourteenth

Amendment Due Process rights by adjourning his case and not responding to his attorney's request for documents.  (ECF No. 1. at PageID.8-9.)  Ultimately, he claims that this delay prejudiced his "rights to a fair trial" and (in apparent support of an Eighth Amendment claim) "caused the 16th Circuit to impose jail time on an offense of assault and battery in which I was incarcerated for 4 days."  (ECF No. 1, PageID.8.)  For the reasons discussed below, Beauchemin's motion should be granted and she should be dismissed from this case.

The United States Supreme Court has long held that the Eleventh Amendment bars suit against a state and its agencies in federal court absent the state's consent.  *Hans v. Louisiana*, 134 U.S. 1, 10 (1890); *see Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996) (reaffirming *Hans*).  This immunity is extended to state officials sued in their official capacity for monetary damages or injunctive relief since the action, in essence, is one for recovery from the state.  *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).  Additionally, § 1983 does not abrogate Eleventh Amendment immunity.  *Quern v. Jordan*, 440 U.S. 332, 343 (1979).  Thus, a § 1983 claim against a state official sued for money damages in her official capacity is barred by the Eleventh Amendment.  *Edelman*, 415 U.S. at 663.  Beauchemin, in her role as Deputy Court Administrator for the 42nd District Court is a state official.  *See Pucci v. Nineteenth District Court*, 628 F.3d 752, 763-64 (6th Cir. 2010) (holding that Michigan's district courts are arms of the State of Michigan, and that their officers are entitled to 11th Amendment immunity).  As such, any claims against Beauchemin in her official capacity are barred by the Eleventh Amendment.

Beauchemin is also entitled to dismissal of any claims against her in her individual capacity under the doctrine of quasi-judicial immunity.  "It is well established that judges *and other court officers* enjoy absolute immunity from suit on claims arising out of the performance of judicial or quasi-judicial functions."  *Foster v. Walsh*, 864 F.2d 416, 417 (6th Cir. 1988).  The Sixth Circuit

has found that court administrators enjoy quasi-judicial immunity when they are sued in connection with their handling of their official court duties. *Bush v. Rauch*, 38 F.3d 842 (6th Cir. 1994) (citing *Scruggs v. Moellering*, 870 F.2d 376 (7th Cir. 1989)). Here, Turner is complaining about acts Beauchemin took or failed to take as Court Administrator in connection with the criminal case against him, such as granting adjournments of his case and failing to provide documents allegedly possessed by the Court. Accordingly, she is entitled to quasi-judicial immunity.

Moreover, Turner's claims related to conduct that he claims resulted in his improper arrest and/or conviction are barred by the *Heck* doctrine. The law is clear that a person convicted of a crime may not use § 1983 as a vehicle for challenging the underlying state court criminal proceedings. *Heck,* 512 U.S. at 486-87; *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). Specifically, in *Heck*, the Court held:

> [I]n order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Heck,* 512 U.S. at 486-87 (footnote omitted).

"The *Heck* doctrine applies to probation revocation[ ] decisions." *Kinard v. Eagan*, No. 18-CV-10595, 2018 WL 2363977, at *2 (E.D. Mich. May 24, 2018) (quoting *McBride v. O'Brien*, 646 Fed.Appx. 277, 278 (3d Cir. Apr. 13, 2016)).

Here, the very record that Turner provided by way of the exhibits to his complaint establishes that he entered a plea of *nolo contendere* to assault and harassment on January 23, 2017. (ECF No. 1, PageID.41.) This resulted in a misdemeanor conviction and a sentence of

16

probation.  (*Id*.)  Turner's violation of that probation resulted in him being sentenced to four days in jail.  (*Id*. at PageID.23.)  Turner does not assert that either his misdemeanor conviction or probation violation terminated in his favor in state court or that a state court deemed his imprisonment invalid.  *See Heck, supra*.

Thus, in order to grant any relief to Turner on his claims against Beauchemin and the 42nd District Court related to the criminal proceedings against him, this Court would have to invalidate Turner's state court conviction and sentencing.  *See id*.  Since that is precisely the type of action this Court is barred from taking under *Heck*, these claims lack merit and should be dismissed.[5]

For all of these reasons, Turner's claims against Beauchemin fail, and her motion to dismiss should be granted.

### 2.     *Dupray and Acciavatti*

Although there are a number of reasons to dismiss Dupray and Acciavatti from this case, perhaps the most straightforward is that Turner does not allege a single fact linking Dupray or Acciavatti to his claims.  (ECF Nos. 1.)

As stated above, pursuant to Federal Rule of Civil Procedure 8(a), a plaintiff is obligated to make, at the very least, "a short and plain statement of the claim showing the pleader is entitled to relief."  *See* Fed. R. Civ. P. 8(a).  Turner fails to do this with regard to the Dupray and Acciavatti. A review of his complaint makes clear that he simply failed to allege any "factual matter" supporting a claim against either of these defendants, thus warranting their dismissal from this case.  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  Turner did not make any effort whatsoever

---

[5] The same analysis applies with respect to Turner's claims against other Defendants related to his arrest and conviction.  For instance, in his response to Acciavatti's and Chesterfield Township's motion, he asserts, "Defendant Chesterfield Township . . . arrested me without probable cause." (ECF No. 24, PageID.395.)  Again, the Court could not find in Turner's favor on that issue without necessarily invalidating his conviction.

to cure this defect in his response briefs.  (ECF Nos. 24, 25.)

Turner's response to Acciavatti's motion contains no factual information about Acciavatti's allegedly unconstitutional conduct.  On the contrary, as he did in his complaint, Turner highlights that he is suing Acciavatti because he is a Chesterfield Township "supervisor."  (ECF No. 24, PageID.396; ECF No. 1, PageID.8.)  Similarly, in his response to Dupray's motion, Turner argues, "In response to Defendant stating that the Mayor is not to be sued in this case [] I state that the police department is not an entity that can be sued on its own.  It is part of the city and Mayor is the Head of that municipal corporation.  Therefore [it] is responsible for its subordinate entities." (ECF No. 25, PageID.413.)

Turner's arguments misconstrue § 1983 law in two respects.  First, as discussed in greater detail below, a municipality cannot be sued under § 1983 simply because one of its employees commits a constitutional violation.  Rather, a municipality is only liable where the plaintiff's injury is caused by the municipality's *own custom or policy*.  *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) ("Under 42 U.S.C. § 1983, while a municipality can be held liable for a constitutional violation, there is no vicarious liability based on the acts of its employees alone.  [] Rather, a local government can be sued under § 1983 only when a policy or custom of that government caused the injury in question.") (citing *Monell*, 436 U.S. at 691-91, 694).  Second, "[a] defendant cannot be held liable under section 1983 on a respondeat superior or vicarious liability basis."  *Street v. Corrections Corporation of America*, 102 F.3d 810, 818 (6th Cir. 1996) (quoting *Harvey v. Harvey*, 949 F.2d 1127, 1129-30 (11th Cir. 1992).  Rather, an individual's "liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'"  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. University of Tennesse*e, 159 F.3d 199, 206 (6th Cir.1998)).  "Because § 1983 liability cannot be imposed under

a theory of respondeat superior, proof of personal involvement is required for a supervisor to incur personal liability." *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005).  Moreover, the plaintiff must allege the defendant's "personal involvement *in the allegedly unconstitutional acts*" themselves.  *Hyman v. Officer Clyde Lewis*, No. 19-11821, 2021 WL 795568, at *3 (E.D. Mich. Mar. 2, 2021) (emphasis added).  *See also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (holding that to state a valid Section 1983 claim, "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights").  For these reasons, even if Turner's contentions that Acciavatti is Chesterfield Township's "supervisor" and Dupray is the "head" of the City of New Baltimore are true, that is not a basis for imposing § 1983 liability against them.  Accordingly, both Acciavatti and Dupray should be dismissed from this case.

### 3. *City of New Baltimore and Chesterfield Township*

The City of New Baltimore and Chesterfield Township are not named as defendants in this case.  (ECF No. 1.)  However, the municipalities joined in the motions to dismiss to the extent Turner could be construed as having attempted to assert claims against them.[6]  (ECF Nos. 16, 17.)  Both argue that Turner failed to allege any facts showing that New Baltimore or Chesterfield had a municipal custom or policy that caused any of its officers or employees to violate Turner's constitutional rights.  (*Id.*)

A municipality may not be held vicariously liable for the actions of its employees under §

---

[6] As Turner seems to admit (ECF No. 25, PageID.413), the municipalities' police departments are not entities subject to suit under § 1983.  *See, e.g., Gollnick v. State of Michigan*, No. 20-10645, 2020 WL 3868489, at *5 (E.D. Mich. July 9, 2020) (citing cases); *Boykin v. Van Buren Twp.*, 479 F.3d 444, 450 (6th Cir. 2007).  Thus, to the extent Turner asserts claims against the New Baltimore and Chesterfield Township Police Departments, those claims should be treated as having been brought against the municipalities themselves.

1983.  Rather, it can be liable only when its official policy or custom directly causes the plaintiff's injury.  *See Connick v. Thompson*, 563 U.S. 51, 60-62, (2011).  This means that the plaintiff must establish that the action that is alleged to be unconstitutional "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978).  *See also Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) ("a plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."); *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (noting that under *Monell*, a plaintiff asserting a § 1983 claim "must demonstrate that the alleged federal violation occurred because of a municipal policy or custom").  To do this, the plaintiff must present sufficient facts to show "'a direct causal link' between the policy and the alleged constitutional violation such that the [municipal policy] can be deemed the 'moving force' behind the violation." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004) (citation omitted).

Turner's complaint does not allege any facts regarding any specific policy of the City of New Baltimore or the Chesterfield Township that defendants Dupray or Acciavatti were allegedly implementing when their officers responded or failed to respond to Turner's complaints.  (ECF No. 1.)  Nor, in response to the respective motion dispositive motions, did Turner allege that New Baltimore or Chesterfield had a municipal custom or policy that caused any of its officers to violate his constitutional rights.  (ECF Nos. 24, 25.)  Rather, he simply made vague statements about conduct of various officers, such as the following in his response to the City of New Baltimore's motion: "[t]he statements officers made to me regarding the fact that because I am black I would be treated different and that they would kill me which deprived me of equal protection under the

law, is my short and plain statement of the claim . . ."  (ECF No. 25, PageID.413.)  As such, even after Turner was expressly advised of his failure to identify a specific policy of the municipalities that caused him to suffer constitutional harm, he failed to even attempt to do so.  Accordingly, Turner's claims against the City of New Baltimore and Chesterfield Township fail and should be dismissed.

        4.    *Thurau*

        While it is difficult to parse the specific constitutional claims Turner is asserting against Thurau, the only one that could even potentially have merit is that Thurau is part of a civil conspiracy involving others to violate his rights under either 42 U.S.C. §§ 1983 or 1985.[7]  A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by

---

[7] As a non-state actor, any other *constitutional* claim against Thurau fails as a matter of law. Private citizens are generally not subject to liability with respect to claims alleging constitutional violations.  *Dallas v. Holmes*, 137 F. App'x 746, 754 (6th Cir. 2005).  However, the Sixth Circuit has held, "[i]f a private party has conspired with state officials to violate constitutional rights, then that party qualifies as a state actor and may be held liable pursuant to § 1983."  *Cooper v. Parrish*, 203 F.3d 937, 952 n.2 (6th Cir. 2000).  *See also Marvaso v. Sanchez*, 971 F.3d 599, 604 (6th Cir. 2020); *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980).  Thus, while Thurau being a "private citizen" dooms any direct constitutional claims against Thurau, it does not necessarily doom his civil conspiracy claim against Thurau under § 1983.  Similarly, under § 1985, a plaintiff can assert a civil conspiracy claim against a private person, provided certain elements are met.  "To demonstrate a private conspiracy under § 1985(3) the plaintiff must prove (1) a conspiracy involving two or more persons, (2) for the purpose of depriving, directly or indirectly, a person or class of persons the equal protection of the laws and (3) an act in furtherance of that conspiracy (4) that causes injury to person or property, or a deprivation of a right or privilege of a United States citizen.  []  The plaintiff must also show the conspiracy was motivated by racial, or other class[-]based animus."  *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996).  *See also Tucker v. U.S. Bank N.A.*, No. 1:17 CV 572, 2017 WL 1434404, at *5 (N.D. Ohio Apr. 20, 2017) (noting different elements of a conspiracy claim under §§ 1983 and 1985); *Cox v. United States*, No. 217CV02349CJCKES, 2019 WL 5580966, at *9 (C.D. Cal. Aug. 30, 2019), report and recommendation adopted, No. 217CV02349CJCKES, 2019 WL 5579533 (C.D. Cal. Oct. 29, 2019) ("The Supreme Court recognized that § 1985(3) is derived not from the Fourteenth Amendment—which requires state action—but rather from Section 2 of the Thirteenth Amendment and thus applies to private conspiracies.") (citing *Griffin v. Breckenridge*, 403 U.S. 88, 105 (1971)).

unlawful action." *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007).  To state a claim for civil conspiracy, Turner was required to allege facts[8] which, if accepted as true, would allow for the conclusion that "'(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed' in furtherance of the conspiracy that caused the injury." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (quoting *Revis*, 489 F.3d at 290).  Moreover, "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003)); *see also Johnson v. Gibson*, No. 20-3280, 2020 WL 5353293, at *3 (6th Cir. July 22, 2020) (holding that a "complaint contain[ing] nothing more than conclusory allegations that [plaintiff's] attorneys conspired with [the judge] to deny his due-process right to a jury trial" failed to state a claim for civil conspiracy).  Under either §§ 1983 or 1985, Turner's conspiracy claim fails for multiple reasons.

First, a plaintiff cannot succeed on a conspiracy claim under § 1983 where there is no underlying constitutional violation.  *See Wiley v. Oberlin Police Dept*., 330 Fed. Appx. 524, 530 (6th Cir. 2009).  Here, for the reasons discussed above, there are no underlying constitutional violations.

Second, "it is 'well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be

---

[8] Although Thurau titles his motion as one for "summary judgment," he also attacks the facial sufficiency of Turner's claims under Rule 12.  (ECF No. 19, PageID.286) ("Defendant Thurau filed a responsive pleading and brings this motion pursuant to Fed. R. Civ. Pro 56, 12(b)(1), 12(b)(6) and 12(c) . . ."). Indeed, substantively, many of Thurau's main arguments challenge Turner's failure to sufficient facts to state a claim. (Id., PageID.289) (noting that "no facts are plead to support [the existence of a conspiracy].").  Accordingly, the Court will apply the Rule 12(b)(6) standards as appropriate.

sufficient to state such a claim.'" *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)). "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim or withstand a motion for summary judgment." *Hartsfield v. Mayer*, 1996 WL 43541, at *3 (6th Cir. Feb. 1, 1996) (citations omitted). *See also Teddy Glen Bostic Senior v. Davis*, No. 2:15-CV-3029, 2016 WL 777198, at *2 (S.D. Ohio Feb. 29, 2016) ("The complaint in question must 'allege specific facts *showing agreement and concerted actions* among the defendants....'") (quoting *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989) (emphasis added)); *Johnson*, 2020 WL 5353293, at *3. Here, Turner failed to plead any facts showing *any* agreement between *any* of the Defendants to violate his constitutional or other civil rights. (ECF No. 1.) Accordingly, Turner's civil conspiracy claims against Thurau should be dismissed.

### 5.   *Claims Pursuant to Federal Criminal Statutes*

Turner also seems to be seeking redress for violation of various federal criminal statutes. For example, at the very end of his complaint, Turner repeatedly references "18 U.S.C. § 3571" and indicates that he is seeking monetary damages for "Mail Threats," in violation of 18 U.S.C. § 876. (ECF No. 1, PageID.9.) To the extent these bald statutory references can be considered "claims," they all lack merit and are subject to dismissal. They either contain no factual details whatsoever, and are thus subject to dismissal based on the pleading requirements discussed above and/or are based on federal criminal statutes that do not create private rights of action. *See Sefa v. Kentucky*, 510 F. App'x 435, 438 (6th Cir. 2013); *Vrooman v. Armstrong*, No. 3:16-CV-01109-YY, 2016 WL 6139953, at *2 (D. Or. Sept. 30, 2016), report and recommendation adopted, No. 3:16-CV-1109-SI, 2016 WL 6139924 (D. Or. Oct. 20, 2016) ("The federal statute cited, 18 USC § 3571, simply provides a schedule of maximum fines applicable in a federal criminal proceeding,

but does not provide any private right of action."); *DIRECTV, Inc. v. Shea*, No. 5:03-CV-61, 2003 WL 23200250, at *2 (W.D. Mich. Oct. 20, 2003) (dismissing claims alleging violation of 18 U.S.C. § 876 because it "is a criminal statute that does not authorize a civil cause of action"). Even ones that have a potential private-action counterpart – *i.e.*, Turner's reference to "racketeering" under 18 U.S.C. § 1963 – fail because he has alleged no facts whatsoever that would support any such claim.

### 6.    *Injunctive Relief*

Turner makes a vague request for injunctive relief. However no injunction is warranted here. Preliminary injunctions "are extraordinary remedies designed to preserve the relative positions of the parties until further proceedings on the merits can be held." *Koetje v. Norton*, No. 13-12739, 2013 WL 8475802, at *2 (E.D. Mich. Oct. 23, 2013). Whether to grant such relief is a matter within the district court's discretion. *See Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 540 (6th Cir. 2007). Courts consider four factors in determining whether to grant a request for a preliminary injunction. *See Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008). Those factors are: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) whether issuance of the injunction will cause substantial harm to others; and (4) whether the public interest is served by issuance of the injunction. *Id.* (citing *Ne. Ohio Coal. for the Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006)).

Here, all of the factors favor denying Turner's request for injunctive relief. First, for the reasons stated above, his underlying claims against the Defendants should be dismissed. Thus, he has no likelihood of success on the merits. Turner has not shown he will suffer irreparable harm absent an injunction. This case covers more than a decade of disputes, and the most recent event

addressed by Turner occurred almost four years ago.  Moreover, the state actor Defendants are already legally bound not to violate Turner's constitutional rights, and it was *Turner* who was ordered to have no contact with Thurau, not the other way around.  Issuing an injunction could harm the public and would serve no public interest; an injunction could impede police officers and municipal officials from performing their jobs of serving their communities, and it would simply be inappropriate for the Court to grant such extraordinary relief where it is so clearly unwarranted.

   *7.*  *Request to Amend*

   Turner vaguely requests that the Court allow him to amend his complaint to fix the defects outlined in the pending motions.  (*See, e.g.*, ECF No. 25, PageID.421.)  At least on the present record, where Turner has made no showing whatsoever that he has any ability to remedy the deficiencies of his initial complaint, this request should be denied.  Turner did not file a motion for leave to amend.  Turner also made no meaningful attempt to respond to the portions of Defendants' motions advising him that his claims lacked the requisite factual detail to proceed. *See e.g., supra* at 20-21.  Indeed, Turner failed to identify *any* additional facts he could add that would alter any of the above analyses.[9]  Moreover, while Turner's allegations are extremely disturbing, most of his complaints stretch back well more than 10 years, and only a small portion of his allegations relate to events that occurred within the three-year period that preceded the filing

---

[9] To the extent Turner argues he needs additional discovery to flesh out the details of his claims (*e.g.*, ECF No. 23, PageID.387 ("Discovery should be allowed to obtain tapes and transcripts from 42 District Court that clearly shows a conspiracy to conceal tapes and transcripts that are in the possession of the court."); ECF No. 24, PageID.396 ("only a miniscule amount of discovery has been submitted"); ECF No. 25, PageID.421 ("discovery should be allowed")), such arguments lack merit.  It is axiomatic that "a party cannot use the discovery process to obtain the facts needed to support its claim after filing suit." *Thabata v. Green Tree Servicing LLC*, No. CV 14-13104, 2016 WL 2893014, at *2 (E.D. Mich. May 18, 2016).  *See also*, *e.g.*, *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011) (holding that a plaintiff must set forth facts *in his complaint* sufficient to demonstrate a right to relief, and "may not use the discovery process to obtain these facts after filing suit.").

of his complaint. Defendants have a right to the prompt resolution of Turner's claims against them.

In sum, at least on the present record, where Turner has not so much as hinted that he has knowledge of additional facts that would cure the pleading defects discussed above, his claims should be dismissed with prejudice.

## III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that all of the Defendants' pending motions (**ECF Nos. 8, 16, 17, 19**) be **GRANTED** and that this case be **DISMISSED**.

Dated: May 24, 2021                          s/David R. Grand
Ann Arbor, Michigan                          DAVID R. GRAND
                                             United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R.

Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address

specifically, and in the same order raised, each issue presented in the objections.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 24, 2021.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
